UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LAND O'LAKES, INC.

        Plaintiff,                         Case No.: 06-C-692

vs.

SUPERIOR SERVICE TRANSPORTATION
OF WISCONSIN, INC.,
GREAT WEST CASUALTY COMPANY,
RUNABOUT EXPRESS, INC. and
OWNER OPERATOR SERVICES, INC.

        Defendants.

**DECISION AND ORDER
GRANTING NEW TRIAL SUA SPONTE**

Beginning on April 28, this case was tried to a jury on the issue of whether Plaintiff Land O' Lakes, Inc. ("LOL"), had failed to mitigate its damages by refusing to take back and resell a shipment of butter after the driver for Defendant Runabout Express, Inc. ("Runabout"), the carrier hired to transport it FOB to a customer in New Jersey, was involved in an accident and was unable to make delivery. The invoice value of the shipment was $66,348.45. After LOL failed to respond to its claims adjuster's request for directions on what to do with the shipment after the accident, defendant Owner Operators Services, Inc. ("Owner Operators"), sold the shipment as salvage for $29,101. When LOL demanded payment of the invoice value of the shipment, Runabout and Owner Operators defended on the grounds that LOL's failure to seal the load in violation of its own written policy rendered the shipment unfit for delivery in any event and, alternatively, that the shipment suffered only minor damage and thus LOL had breached its duty to mitigate by refusing to accept

return of the shipment for resale at or near full market price. Owner Operators offered to settle LOL's claim against its insured for the amount it had received in salvage, but when LOL refused, Owner Operators placed the money in a trust account pending the outcome of the case. LOL then commenced this suit under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, to recover the value of its shipment from Runabout and Superior Service Transportation of Wisconsin, Inc. ("Superior"), the trucking company with whom LOL had originally contracted for transportation of its product and who had assigned this particular shipment to Runabout. LOL also sued Owner Operators for conversion, claiming that it had wrongfully retained the $29,101 recovered when the shipment was sold for salvage.

At the pretrial conference, I dismissed LOL's conversion claim against Owner Operators based on LOL's contention that the shipment was unfit for human consumption after the accident and should have been placed in a landfill. I ruled that LOL's contention that the shipment had no value, combined with its failure to respond to the request of the adjuster for Owner Operators for directions on what to do with the shipment, demonstrated that LOL had abandoned any claim it had for salvage value and stated the case would go to the jury on the Carmack Amendment claim alone. The case then proceeded to trial and was submitted to the jury on a verdict asking whether LOL had failed to exercise reasonable care to mitigate or reduce its damages by refusing to take back and re-sell all or a portion of the load of butter. If the jury answered the first question "yes," it was instructed to determine the loss LOL would have sustained if it had acted reasonably to mitigate its damages.

After a day-and-a-half of trial, the jury deliberated for about three hours and returned a verdict stating that LOL had indeed failed to exercise reasonable care to mitigate its damages by

refusing to take back and resell all or a portion of the load of butter. As to the second question, the jury found that if LOL had taken back the shipment and resold the butter itself, its loss would have been $37,747.20. In essence, it appears that the jury found that LOL would have sold the butter for the same amount that Owner Operators received, and awarded LOL the difference between $66,348.45, the invoice amount, and the $29,101.25 that Owner Operators sold it for as salvage, plus $500, presumably for the amount it believed LOL would have incurred in expenses in reselling the butter itself.

After receiving the verdict and dismissing the jury, I instructed the clerk to enter judgment in favor of LOL and against the defendants, jointly and severally, for the $37,747.20 that the jury found LOL would have received if it had acted reasonably in mitigating its damages. Having given further consideration to the entire matter, however, I now conclude that to award LOL only such damages would constitute error. This is because I am now convinced that my previous ruling dismissing LOL's conversion claim, to the extent it implied that LOL, by failing to take the shipment of butter back and selling it itself had forfeited its right to the proceeds Owner Operators received from its sale of the product as salvage, was in error.

The regulations implementing the Carmack Amendment make clear that it is the duty of the carrier, upon rejection of goods damaged in transit to sell the property for salvage. The regulation states:

> Whenever baggage or material, goods, or other property transported by a carrier subject to the provisions in this part is damaged or alleged to be damaged and is, as a consequence thereof, not delivered or is rejected or refused upon tender thereof to the owner, consignee, or person entitled to receive such property, the carrier, after giving due notice, whenever practicable to do so, to the owner and other parties that may have an interest therein, and unless advised to the contrary after giving such notice, shall undertake to sell or dispose of such property directly or by the

3

> employment of a competent salvage agent. The carrier shall only dispose of the property in a manner that will fairly and equally protect the best interests of all persons having an interest therein.

49 C.F.R. § 370.11(a). The regulation also imposes upon the carrier the duty to keep an itemized record of the sale of such property and its transmission of the money received "to the person or persons lawfully entitled to receive the same." 49 C.F.R. § 370.11(a) and (c).

After being told that the shipment was not deliverable to the customer, Owner Operators sold the butter on behalf of its insured carrier as it was required to do under the above regulation. But instead of then tendering the amount recovered to LOL, Owner Operators offered to settle LOL's entire claim against its insured for the amount recovered. When LOL refused to accept only partial payment of its claim, Owner Operators placed the proceeds from the sale in an account pending the outcome of the case. Nothing LOL did, however, could be read to suggest that it abandoned its claim for the full value of its shipment, including the amount Owner Operators had received from the sale of salvage. Regardless of whether Owner Operator's retention of the amount constitutes a conversion under the common law of Wisconsin, LOL's right to the proceeds of the sale appears clear. To the extent the court's pretrial ruling suggested otherwise, I now conclude it was error.

To be sure, the defendants had a legitimate argument that the butter was not significantly damaged in the shipment and should have been sold at or near the invoice price by LOL, instead of as salvage on the secondary market by Owner Operators. If the jury had so found and returned a verdict finding that had LOL resold the butter itself, its loss would have been only the cost of reconditioning and repackaging the small amount of product that had been deformed in the accident, then LOL's damages would have been limited to what Owner Operators was able to sell the

4

shipment for as salvage. But that is not what the jury found. It found that LOL would have recovered essentially what Owner Operators recovered. And because Owner Operators did not incur the cost of having the shipment transported back to LOL's plant in Wisconsin, Owner Operators actually saved money by selling it on site rather than transporting it back.

To hold under these circumstances that Owners Operators is allowed to retain the proceeds it received from the sale of the shipment as salvage and that LOL can recover only the amount the jury determined it would have recovered had it sold the butter itself would be contrary to basic principles governing mitigation of damages. It would also, as the Third Circuit held in *Paper Magic Group, Inc. v. J.B. Hunt Transport, Inc.*, be unfair to the shipper and result in a windfall to the carrier, or in this case, the carrier's insurer. 318 F.3d 458, 464 (3rd Cir. 2003). The failure of a shipper to mitigate his damages results in the reduction of the recovery that the shipper otherwise would have been entitled to receive for the loss by the amount of the loss that could have been avoided had the shipper acted reasonably. Such failure, however, does not constitute grounds for punishing the shipper by denying him the salvage value actually received for the damaged goods. *Id.* And where, as here, it appears that the shipper would not have obtained a better price than the carrier did, no reduction is appropriate.

In this case, to establish that LOL failed to mitigate its damages, the defendants would have had to convince the jury that LOL could have sold the butter for more than Owner Operators did. It is clear from its verdict, however, that the jury did not so find. Unfortunately, because the court's instructions failed to properly convey this concept, the jury nevertheless found that LOL had failed to mitigate its damages. In essence, the jury was instructed that if it found that a reasonable person in the position of LOL would have sold the butter to reduce the loss, it should find that LOL had

5

failed to mitigate its damages. Here, of course, it was undisputed that Owner Operators had sold the butter shipment for $29,101.25. Based on the court's instruction, the jury reasonably would have believed it was compelled to find LOL failed to mitigate its damages on this fact alone, unless it concluded that the sale by Owner Operators was unreasonable. But that's not the test. The jury should have been instructed that it should find that LOL failed to mitigate only if it found that LOL, acting reasonably, could have sold the shipment for more than the amount Owner Operators received. Only then should the jury then have been asked to determine what LOL's loss would have been had it acted reasonably.

Based on the foregoing and pursuant to Fed. R. Civ. P. 59(d), I conclude that a new trial must be held, unless that parties are able to arrive at a settlement based on the verdict the jury returned. I also conclude that my previous ruling dismissing LOL's claim for conversion against Owner Operators must be vacated. It may be that Owner Operators will be able to demonstrate that LOL's conversion claim fails either factually or as a matter of law. But for now I am satisfied that my dismissal of the claim based simply on LOL's failure to respond to the claims adjuster's request for instructions and LOL's own view that the shipment was not fit to be sold for human consumption was premature at best. Owner Operators will be free to challenge the claim on this or any other grounds, but for now, the claim will remain. The verdict is therefore set aside and the Clerk is instructed to set this matter for a status conference within the next thirty days. Telephone appearances will be allowed.

**SO ORDERED** this ___5th___ day of May, 2008.

                                          s/ William C. Griesbach
                                          William C. Griesbach
                                          United States District Judge